IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Criminal Action No. 22-cr-00213-CMA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

    2.  JAMES DAVID TRUJILLO, JR,

    Defendant.

---

**ORDER DENYING MOTIONS TO SEVER AND MOTION TO SUPPRESS EVIDENCE**

---

This matter is before the Court on three motions brought by Defendant James David Trujillo, Jr.: (1) Motion to Sever and for Separate Trial (Doc. # 77); (2) Motion to Bifurcate Count Four (Doc. # 78); and (3) Motion to Suppress Evidence – Cell Phone Records (Doc. # 79). For the following reasons, the Court denies the motions.

### I.    BACKGROUND

In the Second Superseding Indictment, dated October 18, 2022, Trujillo is charged with: Count One, aiding and abetting a bank robbery in violation of 18 U.S.C. §§ 2113(a) & 2; Count Two, possessing and brandishing a firearm in violation of 18 U.S.C. § 924(c)(1)(A)(ii) & (2); and Count Four, possession of a weapon by a prohibited person in violation of 18 U.S.C. § 922(g)(1). (Doc. # 35.) Trujillo and codefendant Darren Connolly are currently set for a jury trial on March 13, 2023. (Doc. # 70.)

The charges in this case arise from a bank robbery on June 15, 2022.[1] (Doc. # 77 at 2.) At approximately 5:34 p.m., two individuals armed with a shotgun and an assault rifle exited a grey Ford Fusion and entered a credit union in Lakewood, Colorado. (*Id.*) The subjects wore hoodies, sunglasses, face coverings, and gloves. (*Id.*) They approached multiple tellers, pointed guns at the tellers, and took $2,770. (*Id.*) They then left the bank and departed in the same car, which was driven by a third individual. (*Id.*)

After the robbery, the Government contacted state parole, which informed investigators that Defendant Connolly was on parole, that he was wearing a GPS bracelet, and that the GPS bracelet was at or inside the credit union during the time of the robbery. (*Id.*) Law enforcement also compared Connolly's GPS coordinates with HALO photographs of the Ford Fusion and found that they were consistent with Connolly being in the suspect car. (*Id.*)

Later in the evening of June 15, investigators used Connolly's GPS coordinates and discovered that he went to PT's strip club. (*Id.*) Surveillance videos at PT's showed that Connolly was with another male, later identified as Trujillo. (*Id.*)

The next day, June 16, 2022, the Government obtained an arrest warrant for Connolly. (*Id.*) Officers arrived at Connolly's residence at approximately 6:00 p.m. and made verbal commands over a loudspeaker for the occupants to exit the home. (*Id.*) When Connolly and another individual refused to comply, law enforcement "deployed a

---

[1] Unless otherwise indicated, the Court takes the following recitation of the facts of this case from Trujillo's Motion to Sever and for Separate Trial (Doc. # 77).

40mm foam projectile" through an open window on the second floor and deployed chemical agents into the home. (*Id.* at 3.) Law enforcement then attempted to negotiate with Connolly over the phone. (*Id.*) After over three hours, and after deploying more projectiles and chemical agents, law enforcement took Connolly into custody. (*Id.*) During the search of Connolly's home, officers found a shotgun, an AR-15 pistol, ammunition, and empty magazines for an AR and a Glock. (*Id.*) Connolly's palm print was found on the shotgun. (*Id.*)

In addition to the above facts, the Government alleges that Trujillo and Connolly communicated by cell phone for days prior to the robbery, including a text from Connolly to Trujillo the morning of the robbery concerning hiding a "gauge" (slang for a shotgun). (Doc. # 84 at 5.) The Government also asserts that messages between Connolly and Trujillo after the robbery "discuss selling the 'AR-15' and ascertaining the location of 'the shotgun.'" (*Id.*) In addition, call detail records from Trujillo's phone indicated that Trujillo and Connolly met up at Connolly's residence prior to the robbery and then at PT's after the robbery. (*Id.* at 5–6.) Finally, the Government states that it anticipates calling a witness who will identify Connolly and Trujillo together before, during, and after the robbery and in possession of firearms while in the getaway car. (*Id.* at 6.)

The Government will address each of Trujillo's motions in turn.

## II.     **MOTION TO SEVER AND FOR SEPARATE TRIAL**

First, Trujillo moves the Court to sever his trial from Connolly's on the basis that disparate evidence will be presented against Connolly that would prejudice Trujillo and deprive him of a fair trial. (Doc. # 77.) Trujillo contends that "the evidence against Mr.

Connolly is quantitatively disparate, distinctive, and significantly more than that against Mr. Trujillo." (*Id.* at 5.) The Government opposes Trujillo's motion and argues that severance is not warranted because (1) Trujillo has not established prejudice by nature of the "spillover effect" of evidence pertaining to codefendant Connolly; (2) Trujillo ignores or trivializes the strong evidence the Government has against him, and the evidence against both defendants is "overlapping and intertwined"; (3) Trujillo has not established that his defense is antagonistic with Connolly's; and (4) judicial economy weighs heavily in favor of a joint trial. (Doc. # 84.)

**A.    LEGAL STANDARD**

Federal Rule of Criminal Procedure 8(b) provides that multiple defendants may be joined in a single indictment "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Trujillo does not contest the joinder of the defendants in the indictment pursuant to Rule 8(b). (Doc. # 77 at 4.) Instead, Trujillo requests severance under Rule 14(a), which permits the Court to sever the defendants' trials if the joinder of defendants in an indictment "appears to prejudice a defendant or the government." Fed. R. Crim. P. 14(a); *see United States v. Hill*, 786 F.3d 1254, 1272 (10th Cir. 2015) (discussing the differences between Rule 8 and Rule 14).

Rule 8 "expresses the 'preference in the federal system for joint trials of defendants who are indicted together.'" *United States v. Pursley*, 577 F.3d 1204, 1215 (10th Cir. 2009) (quoting *Zafiro v. United States*, 506 U.S. 534, 537 (1993)). "Joint trials of defendants who are charged together are preferred because 'they promote efficiency

and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" *United States v. Zapata*, 546 F.3d 1179, 1191 (10th Cir. 2008) (quoting *United States v. Hall*, 473 F.3d 1295, 1301 (10th Cir. 2007)). Thus, in order for a court to sever the defendants' trials under Rule 14, a defendant must show that he will suffer "actual prejudice" in a joint trial. *United States v. Caldwell*, 560 F.3d 1214, 1221 (10th Cir. 2009). Actual prejudice means "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 938. However, the Tenth Circuit has "repeatedly held" that "the requisite showing of prejudice 'is not made by a complaint that one defendant is less culpable than another, or by an allegation that a defendant would have a better chance of acquittal in a separate trial, or by a complaint of the 'spill-over' effect of damaging evidence presented against a codefendant.'" *Zapata*, 546 F.3d at 1191 (quoting *United States v. Iiland*, 254 F.3d 1264, 1270 (10th Cir. 2001)).

When ruling on a motion to sever, the Court "must weigh the prejudice caused by the joinder against considerations of economy and expedition in judicial administration." *United States v. Rinke*, 778 F.2d 581, 590 (10th Cir. 1985). The decision of whether to sever is a matter within the Court's sound discretion. *United States v. Rogers*, 652 F.2d 972, 976 (10th Cir. 1981).

**B.   DISCUSSION**

Trujillo primarily argues that he would be prejudiced by a joint trial because the evidence against Connolly is disparate and significantly greater than the evidence that

would be admissible in a trial against Trujillo alone. (Doc. # 77 at 5.) He contends that this evidence "includes, but is not limited to, GPS evidence, the stand-off with law enforcement, weapons found in [Connolly's] home, and a palm print from one of the weapons identifying Mr. Connolly." (*Id.*)

The Court finds that Trujillo has failed to demonstrate that the evidence against Connolly is so significant and disparate that its admission in a joint trial will deprive Trujillo of a fair trial. Trujillo's argument that the above evidence will "rub off" on him is, in effect, a spillover argument in which Trujillo speculates that he will be tainted by association. It is well established that Trujillo cannot satisfy Rule 14(a)'s actual prejudice showing "merely by pointing to a negative spill-over effect from damaging evidence presented against codefendants." *Caldwell*, 560 F.3d at 1221. Such an argument is insufficient per the "nearly insuperable rule in this circuit" that "a defendant cannot obtain severance simply by showing that the evidence against a co-defendant is more damaging than the evidence against [himself]." *United States v. Wardell*, 591 F.3d 1279, 1300 (10th Cir. 2009) (quoting *United States v. Dazey*, 403 F.3d 1147, 1165 (10th Cir. 2005)). Beyond arguing that the evidence against Connolly is greater and more damaging, Trujillo does not identify with any specificity how introduction of that evidence would deprive him of a fair trial.  Further, Trujillo does not assert that he and Connolly have "mutually antagonistic defenses" such that severance is warranted. *See Dazey*, 403 F.3d at 1165 (observing that for a court to sever a trial due to mutually antagonistic defenses, "the conflict between the defendants' defenses must be such that 'the jury, in order to believe the core of one defense, must necessarily disbelieve the core of the

6

other'" (quoting *United States v. Linn*, 31 F.3d 987, 992 (10th Cir. 1994))).

In addition, Trujillo appears to concede that some of the above recited evidence may be admissible against him even if the trials on Counts One and Two and Count Four were severed. (Doc. # 77 at 5–6.) For example, Trujillo acknowledges that the Government "may admit evidence that weapons were found in Mr. Connolly's home in a trial against Mr. Trujillo." (*Id.* at 5.) Trujillo also notes that the evidence of Connolly's GPS bracelet "may be admitted" in Trujillo's trial "on a limited basis"; however, Trujillo contends that it would be "much more limited than it would be against Mr. Connolly himself." (*Id.* at 6.) Trujillo does not explain how the limitation of the GPS evidence would be significantly substantive to warrant severing his trial with Connolly's.

With respect to Trujillo's concern about prejudice caused by the admission of evidence of Connolly's three-hour standoff with law enforcement, the Court finds that any potential prejudice may be cured through "less drastic measures, such as limiting instructions." *Zafiro*, 506 U.S. at 539; *see also Richardson v. Marsh*, 481 U.S. 200, 211 (1987) (observing that "juries are presumed to follow their instructions"). Trujillo will have the opportunity to propose limiting instructions for the jury regarding the standoff and any other evidence he contends is admissible solely against Connolly. The Court is satisfied that such limiting instructions will ameliorate any prejudice caused by introduction of evidence that would otherwise not be admissible against Trujillo.

Finally, the Court finds that Trujillo has failed to show that any prejudice "outweighs the expense and inconvenience of separate trials." *United States v. Thomas*, 849 F.3d 906, 911 (10th Cir. 2017). Because the Counts against both defendants rely

on the same or similar facts arising from the same act or transaction, two trials would require largely duplicative evidence and testimony. *See United States v. Adams*, 418 F. App'x 688, 692 (10th Cir. 2011) (unpublished) ("Even if there were some prejudice to be found here, it would not outweigh the cost of saddling the court, parties, and witnesses with separate trials requiring presentation of repetitious evidence and testimony."). The Court therefore finds that judicial economy weighs in favor of a joint trial.

For these reasons, the Court finds that Trujillo has not met his burden of establishing that severance is warranted. The Court therefore denies his motion for a separate trial (Doc. # 77).

### III.     MOTION TO BIFURCATE COUNT FOUR

Next, Trujillo moves for a separate trial on Count Four, felon in possession of a firearm. (Doc. # 78). He argues that admission of his prior felony conviction would not be admissible in a trial of Counts One and Two and that evidence of the conviction would result in a high risk of prejudice against him. (*Id.* at 2.) In response, the Government contends that Trujillo has failed to demonstrate that he will suffer significant prejudice in a joint trial, particularly because the evidence is likely admissible against him regardless, and that interests of judicial economy weigh against severance. (Doc. # 86.)

Federal Rule of Criminal Procedure 14's actual prejudice standard also applies to motions to sever offenses.[2] Accordingly, the Court incorporates its above recitation of

---

[2] Rule 8(a) provides that an indictment may charge multiple offenses if those offenses "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). In this case, there

8

the law governing Rule 14(a).

The Court agrees with the Government that Trujillo has failed to establish that he would suffer actual prejudice by admission of his prior conviction in a trial on Counts One and Two. Although Trujillo asserts that admission of his prior conviction would be inadmissible in a joint trial, Trujillo provides no authority for his position. (Doc. # 78 at 2.) Rather, as the Government correctly observes, evidence of Trujillo's prior convictions is likely admissible to prove that Trujillo possessed and brandished a firearm in furtherance of a crime of violence. *See* 18 U.S.C. § 924(c)(1)(A); Pattern Crim. Jury Instr. 10th Cir. 2.45.1 (2021). The Tenth Circuit has set out a list of non-exhaustive factors for determining whether a firearm was possessed in furtherance of a crime of violence, and one of those factors is "the status of the possession (legitimate or illegal)." *United States v. Basham*, 268 F.3d 1199, 1207 (10th Cir. 2001). One way the Government may prove that element is by introducing evidence that Trujillo was legally barred from possessing firearms and therefore did not have some other, legitimate purpose for possessing such weapons. *See id.*; *see also United States v. Bustos*, 303 F. App'x 656, 668 (10th Cir. 2008) (unpublished) (concluding that "the illegal status of a defendant's firearm possession has probative value in terms of determining if that possession was in furtherance of a drug trafficking crime" under 18 U.S.C. § 924(c)(1)(A)). Trujillo does not explain why his prior admission would be inadmissible in a separate trial, and he provides no Tenth Circuit authority for its exclusion.

---

does not appear to be any dispute that the charges were properly joined under Rule 8(a) because all three crimes occurred on the same date as part of the same common scheme or plan.

Moreover, although other Circuits have endorsed stronger standards for the "special prejudice concerns" applicable to joined felon in possession charges, the Tenth Circuit has repeatedly held that felon in possession counts may be tried with other counts. *See, e.g.*, *United States v. Valentine*, 706 F.2d 282, 290 (10th Cir. 1983). Specifically, the Tenth Circuit has found no error in denying motions for severance where, as here, the felon in possession count is factually connected to the other counts due to the defendant's own conduct. *See, e.g.*, *United States v. Jones*, 213 F.3d 1253, 1260–61 (10th Cir. 2000) (finding no prejudicial joinder of felon in possession charges and armed bank robbery charges because "the relationship of the charges clearly grew out of [defendant's] own conduct").

Even if Trujillo could establish that his prior convictions would be inadmissible in a trial on Counts One and Two only, the Court finds that he has failed to show that he would suffer "actual prejudice" if all three Counts were tried together. *Thomas*, 849 F.3d at 911. Trujillo's only argument is that he faces "a high risk of undue prejudice" such that the jury "should not hear evidence of [his] conviction when considering the evidence in Counts One and Two." (Doc. # 78 at 2.) This conclusory assertion is insufficient to demonstrate a "serious risk" that trying the charges together "would compromise a specific trial right, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. Finally, the Court notes that Trujillo has entirely failed to address whether any prejudice "outweighs the expense and inconvenience of separate trials." *Thomas*, 849 F.3d at 911. Given the lack of prejudice, the Court finds that judicial economy is best served by having one trial.

For the foregoing reasons, the Court denies Trujillo's Motion to Bifurcate Count Four (Doc. # 78).

### IV.   MOTION TO SUPPRESS EVIDENCE – CELL PHONE RECORDS

Next, Trujillo moves to suppress cell phone record evidence. (Doc. # 79.) He argues that then-United States Magistrate Judge Nina Y. Wang erred in granting the challenged warrant for cell phone records because (1) the affidavit contained insufficient probable cause to search for and seize the cell phone records associated with Trujillo; and (2) the request for records exceeded the scope for probable cause. (*Id.*)

#### A.   ADDITIONAL FACTS

On June 22, 2022, approximately one week after the robbery, law enforcement obtained a search warrant for Connolly's seized phone. (Doc. # 79 at 2.) From reviewing the records, law enforcement discovered that Connolly communicated with a phone number ending in 9040 ("target cell phone"). (*Id.*) On June 28, 2022, Special Agent Greg Kloepper filed an Application for a Search Warrant and an affidavit requesting phone records from May 16, 2022, to present for the target cell phone. (*Id.*)

In the affidavit, Special Agent Kloepper summarized in detail the facts of the robbery committed by two individuals with a third individual driving the Ford Fusion. (Doc. # 79-1 at 8–9.) He explained that based on surveillance from Connolly's GPS bracelet, agents were able to ascertain that Connolly was present at the bank during the robbery and in the getaway vehicle. (*Id.* at 9.) After the robbery, surveillance footage from PT's Showclub depicted Connolly entering the business with another individual

identified as Trujillo. (*Id.* at 11.) Both Connolly and Trujillo appeared to be in possession of large amounts of cash. (*Id.*)

Special Agent Kloepper stated that when agents arrested Connolly, they found a black Samsung cellular phone on his person. (*Id.* at 9.) On June 22, 2022, agents were granted a search warrant for the phone. (*Id.* at 10.) Agents also located a Facebook account for Connolly in the name of "Zay Finesse." (*Id.* at 11.) On that Facebook profile, there were multiple photos of Connolly holding a phone which appeared to be the same make, model, and color as the phone recovered on Connolly at the time of his arrest. (*Id.*) Special Agent Kloepper included four of these photos in the affidavit. (*Id.* at 12.)

Agents also found a Facebook account in the name of "Jimi Leyba" for Trujillo. (*Id.* at 11.) Among the contacts found on Connolly's phone was the name "Jimi" with the 9040 number. (*Id.* at 12.) At approximately 6:27 a.m. on June 15, 2022, the morning of the robbery, a message was sent from Connolly's phone to "Jimi" which stated "aye fam grab my gauge and put it with the bab y [sic] hide 'em". (*Id.* at 12–13.) Special Agent Kloepper stated that "gauge" is known slang for shotgun. (*Id.* at 13.) He further stated that there were multiple messages sent between the two phones before and after the robbery. (*Id.*)

Special Agent Kloepper explained that Colorado Department of Corrections parolee records listed the 9040 number as the main phone number for Trujillo. (*Id.*) The 9040 number was also used to call in for self-reporting for Trujillo on May 27, 2022, and twice on June 8, 2022. (*Id.*) Agents identified that the 9040 number associated with the target cell phone was served by Verizon. (*Id.*)

Based on the foregoing, Special Agent Kloepper requested a search warrant for the target cell phone and information about the target cell phone which was within the possession, custody, or control of Verizon. (*Id.* at 2.) He requested historical and subscriber information, cell tower data, and specialized location records from May 16, 2022, to the date of the search warrant application. (*Id.* at 4.)

**B.     LEGAL STANDARD**

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. "In other words, the Fourth Amendment requires warrants to be supported by probable cause and to describe with particularity who and what can be searched and seized." *United States v. Palms*, 21 F.4th 689, 697 (10th Cir. 2021). Generally, if a search or seizure was pursuant to a warrant, the defendant has the burden of proof to demonstrate that it violated the Fourth Amendment. *United States v. Maestas*, 2 F.3d 1485, 1491 (10th Cir. 1993). The Fourth Amendment's probable cause and particularity requirements apply to search warrants for cell phones records. *See, e.g.*, *Palms*, 21 F.4th at 698; *see also Riley v. California*, 573 U.S. 373, 401 (2014).

In determining whether a search warrant is supported by probable cause, the court "reviews the sufficiency of the affidavit upon which a warrant is issued by looking at the totality of the circumstances and simply ensuring that the magistrate had a substantial basis for concluding that probable cause existed." *United States v. Cooper*,

654 F.3d 1104, 1124 (10th Cir. 2011) (quoting *United States v. Tisdale*, 248 F.3d 964, 970 (10th Cir. 2001)). Probable cause means "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Simpson*, 152 F.3d 1241, 1246 (10th Cir. 1998). A magistrate judge's determination that probable cause exists is entitled to "great deference." *United States v. Wittgenstein*, 163 F.3d 1164, 1171 (10th Cir. 1998).

As to particularity, "[a] description is sufficiently particular when it enables the searcher to reasonably ascertain and identify the things authorized to be seized." *Cooper*, 654 F.3d at 1126 (quoting *United States v. Riccardi*, 405 F.3d 852, 862 (10th Cir. 2005)). "Whether a search warrant is sufficiently particular depends in part on the nature of the crimes being investigated." *Id.* at 1127. The warrant must particularly describe the things to be seized and searched to prevent a "general, exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971).

**C.    DISCUSSION**

Trujillo first argues that the affidavit does not establish probable cause to search and seize his cell phone records. (Doc. # 79 at 5.) Specifically, Trujillo objects that in the five and a half pages of the affidavit devoted to probable cause, Trujillo is insufficiently mentioned. (*Id.* at 5–6.) He argues that none of the information about his Facebook profile being "friends" with Connolly's profile is evidence of any type of criminal activity. Further, he disputes that the message "aye fam grab my gauge and put it with the bab y [sic] hide 'em" is itself sufficient information for probable cause. Finally, Trujillo notes

14

that the affidavit provides zero details about the "multiple messages" sent between the two phones before and after the robbery. (*Id.* at 6.) Trujillo contends that the officer's interpretation of a single message sent from Connolly to "Jimi" is insufficient to establish probable cause that records connected to Trujillo's cell phone would contain fruits or evidence of criminal activity. (*Id.*)

Upon carefully reviewing the affidavit, the Court disagrees with Trujillo and finds that then-Magistrate Judge Wang had a substantial basis for concluding that probable cause existed to believe that Trujillo's phone records contained fruits or evidence of criminal activity. *See Cooper*, 654 F.3d at 1124. The affidavit clearly laid out the facts of the robbery and explained that Trujillo and Connolly were together shortly after the robbery occurred at PT's strip club, both with large amounts of cash. Further, the affidavit explained the connection between Trujillo and Connolly by identifying that their Facebook profiles were "friends" and that Connolly had a contact in his phone with the name "Jimi" with Trujillo's phone number. The two phones exchanged messages before and after the robbery, and on the morning of the robbery, a message was sent from Connolly's phone to Trujillo's phone using slang for shotgun. A shotgun was used during the robbery later that day, and agents found a shotgun at Connolly's residence after the fact. Based upon the totality of the circumstances, the Court is satisfied that these facts within the affidavit were sufficient to establish probable cause that the target cell phone, belonging to Trujillo, contained evidence of criminal activity.

Next, Trujillo challenges whether the warrant was sufficiently particular. (Doc. # 79 at 6.) Trujillo argues that the requested date range from May 16, 2022, to June 28,

2022, was overbroad and "is akin to a 'general rummaging' of the call detail records and location connected to that phone number." (*Id.*) He contends that there was no legal justification for the date range to extend back to May 16. (*Id.*)

The Court disagrees with Trujillo. Although Trujillo argues that the date range from May 16, 2022, to present lacked "legal justification," Trujillo provides no explanation or authority as to how this date range rendered the warrant unconstitutionally general. There is no requirement under the Fourth Amendment that a warrant specify a date range at all. *See, e.g.*, *United States v. Loera*, 59 F. Supp. 3d 1089, 1053 (D.N.M. Oct. 20, 2014) (noting that "although the Tenth Circuit has not directly addressed the issue, multiple Tenth Circuit cases have found search warrants sufficiently particular despite not specifying a date range" and collecting cases). Rather, the Court finds that the temporal limitation from May 16, 2022 (approximately one month before the date of the robbery on June 15, 2022), to June 28, 2022 (the date of the warrant), served to appropriately limit the scope of the search to the time period potentially relevant to before and after the robbery. Accordingly, the warrant described with sufficient particularity the target cell phone to be searched such that agents could "reasonably ascertain and identify the things authorized to be seized" within a reasonable date range. *Cooper*, 654 F.3d at 1126. The Court is therefore satisfied that the warrant in this case was not "a license for just a general rummaging." *United States v. Brooks*, 427 F.3d 1246, 1251 (10th Cir. 2005).

For these reasons, the Court denies Trujillo's motion to suppress cell phone record evidence. (Doc. # 79.)

## V. CONCLUSION

For the foregoing reasons, it is ORDERED as follows:

- Defendant Trujillo's Motion to Sever and For Separate Trial (Doc. # 77) is DENIED;

- Defendant Trujillo's Motion to Bifurcate Count Four (Doc. # 78) is DENIED; and

- Defendant Trujillo's Motion to Suppress Evidence – Cell Phone Records (Doc. # 79) is DENIED.

DATED: February 10, 2023

BY THE COURT:

CHRISTINE M. ARGUELLO
Senior United States District Judge